Okay, Mr. Angioletti, you've asked for one minute of rebuttal, so that gives you nine out of the gate. You may proceed. Thank you, Judge. What I would like to address first is that I believe that the district court incorrectly applied 3B1.1A, leadership enhancement, and the misapplication of that enhancement affected every aspect of the sentence later on down throughout the sentencing proceeding. The reason that I believe the district court erred is the key, when you read about 3B1.1, the concept that keeps coming up, whether you read the guidelines primer, whether you read the cases, it's always relative culpability. What the court did here was a very odd thing. It said that at the top of this hierarchy were two powerful Venezuelan politicians, Lopez Bello and Assami Madden. But your client wasn't convicted of the drug conspiracy, he was convicted of violating the Kinpin Act, which is violating the sanction statutes and providing the assistance to them, right? So isn't that the relevant conspiracy we're talking about as to whether he's a leader? I think the conspiracy that he's charged with, his co-conspirators, are Assami Madden and Lopez Bello. So that's the way the accusatory instrument is drafted. And I think if you want to understand what the- But the actual conviction is the Kinpin Act, right? That's correct. It's violating the sanction statutes. So the actual offense he's convicted of is conspiracy to provide charter services to those folks. That's correct, but I think- So I understand, you can make your argument, but before we get to that, so if that were the relevant conspiracy, is he a leader of that? Did he coordinate the provision of the charter services or direct others to provide them? Even limiting it to the charter services, he's not really a decision maker in terms of the charter services. I think that my counterpart in the district court came up with a very good metaphor that I really can't improve on. She characterized him as a glorified Uber driver. And I think that's quite apt, because if you look at- But is he actually a dispatcher, because he's not flying all the planes, he's coordinating other people to fly the planes, right? He's coordinating other people to fly the planes, but he's not, he doesn't have any decision making authority. Lopez, Barrow, and Asami Mata and their henchmen are the ones who are dictating every detail of the flights that are going to be provided. The district court made certain factual findings. He organized pilots, he arranged for services, he marshaled services and people. The other two guys were his clients, they weren't his employer. Coro was the boss of the charter services. Are those findings clearly erroneous? First of all, I don't think that the clearly- Are they clearly erroneous? I don't think the clearly erroneous standard applies. And if they're not, you don't think that's those factual findings? The facts were not really in dispute as to what you get. I dispute the application of 3B1.1 to those facts. And that standard of review is de novo review. It's not clearly a review. And in terms of- So the application is whether the defendant was an organizer or a leader of a criminal activity that involved five or more participants. That's correct. Were there five or more participants here? Yeah, the issue was not five or more. The issue was what his role was. You don't think he was an organizer of those five or more participants? I don't think he was. He was arranging the schedules and assigning them, but you don't think he was organizing? But he was not selecting, he was not a decision maker. Assami Madda and Lopez Bello and Hinchman were dictating every detail of those rights. Did he ever stop providing charter services to El Aissami? At one point, didn't he just cut him off from the charter services? I think he did. So then, is he making decisions then as to whether to provide the services? But I think the problem, the other aspect of it, first of all, in terms of him being a client, which Judge Chin spoke to me about, I want to follow up on that before I forget. Okay. The court says, well, they're not his boss, they're clients. And it makes me think back to the time I left the district attorney's office and went to work at a private law firm. And the first thing I was taught was, every client is a boss. Well, that doesn't matter, because the guideline allows for multiple people to be leaders and organizers. So the issue here is whether your client was a leader and organizer, not who was the ultimate boss, right? But what I'm saying is, the guideline- I'm sorry, every client is a boss, so if you're a lawyer and your client asks you to do something illegal, you have no choice but to do it? Let him answer my question. I'm sorry for the earlier comment, but you can get right back around to that. Steve, let him ask my question first, okay? Answer my question, please. Okay, I'm sorry, because I'm a little confused between two questions. Can I get the question again? Sure. In this case, so in this case, was your client not organizing the people in his company? Regardless of whether others might have been his ultimate boss. He was organizing the people in his company, but his decision making capacity, which is one of the factors you look at for 3B1.18, he wasn't a decision maker. He was following the orders of- Sir, does the enhancement say you have to be a decision maker? I'm not, it says an organizer or a leader. Was he not an organizer or a leader? He's not exercising independent judgment. Was he an organizer? I think he was more of a manager. I think if you look at the cases- What was the difference between a manager and an organizer? Independent judgment. Okay, can I just go back to that other question about the client? Yes, and I'm sorry that, I'm sorry- You're right, so the client is the boss, but obviously if the client asks you to do something that you think is illegal, like you're not forced to do whatever the client says, you can withdraw from the representation, can't you? You can't- But I understand, they say the customer's always right, but actually sometimes you decide not to serve the customer because they're asking something that you don't want to do. And the customer can't force you to do it, right? Isn't that the case? As a lawyer, if the client asks you to do something that's illegal, then the canons say you don't do it. But if the client asks you to do something that's legal, then in fact you are obligated to do it. Okay, so even if he was responding to the requests of his client, were they asking him to do something that was legal or illegal? They were asking him to do something that was illegal. But the other thing that I would point to in terms of him not being a leader, the reason he kept, he was no fan of this Maduro regime. In fact, he left Venezuela because he couldn't stand the Maduro regime. He came to this country here, he built a life, he built his own company. But the reason that he kept providing services was because Lopez Barro and Asami Mata owed him a ton of money. And he kept hoping against hope that if he kept providing the services, they would pay some of what they owe him and his company would not go under. And in terms of a leader, I don't think you find a leader who's owed a ton of money by other members of the conspiracy. Leaders get paid, this guy wouldn't get paid. The district court actually thought that the Venezuelans were not part of the conspiracy, right? He said he's not counting the two Venezuelans as the five individuals that have to be part of the conspiracy, because he says the relevant conspiracy is not the drug conspiracy, but it's the provision of charter services, right? Yeah, but I think- So when you say that he was owed money by other members of the conspiracy, the district court actually didn't think that that was the relevant conspiracy, that those two who owed him money were not conspirators. I think that they are relevant to the conspiracy to provide the charter services because they're calling the shots. The date, the time, the aircraft, the pilots. Those aren't decisions being made by Victor Moniz-Curro. Those are decisions being made by Asami Mata and Lopez Bella. Okay, you've got one minute for rebuttal, Mr. Angeletti. So we'll now hear from Mr. Adelsberg for the government. May it please the court, my name is Sam Adelsberg and I am an assistant United States attorney in the Southern District of New York. I represent the United States on appeal and represent the government in the proceedings below. The appellant raises two issues on appeal, they are without merit, and the judgment of the district court should be affirmed. The defense first challenge relates to the district court's application of the full point leadership enhancement under section 3B1.1A of the United States sentencing guidelines. This court should affirm the lower court's ruling that the defendant, the head of a private jet company called ACS, was a organizer or leader when he used his company, his connections with Venezuelan officials, his planes, his pilots, his bank accounts, his FAA license, and his employees to provide illegal flight services in violation of our nation's sanctions. To begin, Mr. Moniz- Do you agree with what Mr. Angeletti just said, which is that the pilots and the planes and the flights were chosen by the kingpins and not his client? Absolutely not. The factual record in the district court makes clear that the logistics as to how the flights were actually operated were Mr. Moniz's domain. Yes, there was a demand side, a consumer side. These Venezuelan officials would ask for a flight. They would say, I need to go from destination A to destination B. But at that point, and this is the locus of the conspiracy, a US person, a US entity, Mr. Moniz-Corot and his organization, his company, his planes, his pilots, he would then go into first gear to make sure that he can accommodate those requests. And he did so using his own decision making prowess. He would figure out which planes to use, which subcontractors to use. His bookkeepers would be the ones keeping tabs on making sure that they were actually getting paid thereafter. He would decide- So who were the other members of the conspiracy, of the relevant conspiracy? They're charged members and they're uncharged members. As charged in the conspiracy were other members of Mr. Moniz-Corot's organization, including Mr. Leon Mao. There were another pilot, Mr. Quintanilla. There were the Venezuelan officials, including some that were the sanctioned individuals, some that were not sanctioned, or one that was not sanctioned. Sanctioned individuals, you think, are part of the relevant conspiracy? Certainly. They are part of the relevant conspiracy. Mr. Moniz-Corot did say he wasn't going to count them because he thinks the relevant conspiracy is something different. So they're basically participants in two conspiracies, the drug conspiracy, but also the conspiracy to get charter services. Just to be clear, the drug conspiracy, they were designated as narcotic kingpins. There's no actually drug conspiracy. But the organization that is conducting those illicit activities is different from the organization that's providing the charter services. Mr. Moniz-Corot drew that distinction. He said the relevant conspiracy is the second one. And that was what Mr. Moniz pled guilty to, was a violation of the Kingpin Act, which was an evasion of U.S. sanctions by using U.S. persons and entities to provide services to designated individuals, individuals designated by OFAC, Office of Foreign Assets Control. Even though they are running the drug operation, they're actually not the leaders of the conspiracy to provide charter services. Yeah, just to be very clear, there's no drug allegation as to Mr. Moniz-Corot. That was not at all part of the record. And in fact, this case does not actually charge the Venezuelan leaders with drug trafficking. Those were pre-existing sanctions violations or sanctions determinations that, again... Yeah, you said it, but Mr. Moniz-Corot does say that there's a larger conspiracy going on, of which he's not the leader. But you don't dispute that. You just don't think it's the relevant conspiracy. Yes, exactly. Here, again, the cases, as we've seen, break down when thinking about relative responsibility into points where there are geographic distinctions and there are role distinctions or functional distinctions. And as Your Honor Judge Sullivan made clear, there could be more than one leader. The question is, was this individual a leader, not the leader? And here it's clear, based on the facts and the record, that Mr. Moniz was clearly a leader. He was the one here organizing the planes, organizing the flights, organizing the pilots, and making sure that this scheme continued using his American-based infrastructure to ensure that the scheme continued. If there are no further questions, I'm happy to rest on our submission. Well, I guess maybe I don't think Mr. Angeletti got to it yet, but maybe he will and we will. Just the substantive unreasonableness point, the disparities among other defendants, I guess. I mean, I'd just be curious as to what other co-conspirators got or what other similarly situated defendants got that would support or undermine this disparities argument. Your Honor, no one else in the case has been sentenced so far. The government submits that the district court's below-guideline sentence did not create an unwarranted sentencing disparity, though. As an initial matter, Judge Hellerstein fully considered defense counsel's arguments on this score regarding sentences provided to other sanctions providers. And Mr. Moniz's suggestion that the district court gave this factor short shrift and his claim that the district court did not actually consider this, I think is also meritless. These were highly briefed issues. These were hundreds of pages of briefs. The district court addressed it at sentencing, made clear that the facts of this case are particular and are not easily analogizable, if that's a word, to other cases. There aren't many sanctions cases to begin with. There aren't many sanctions cases dealing with the Venezuelan Maduro regime. There aren't many sanctions cases that deal even more specifically with the provision of these flights at a very important time in international sanctions relief effort. And so it, it, it, Judge Hellerstein made clear that this is not necessary, these are not easy, you can't just, you know, look at a range of, of, of sanctions cases and say, oh, this is where this one fits. But even looking at the cases that were provided, the government pointed out, and the district court had before it, clear cases where sanctions cases were actually very analogous, and the sentences and the guidelines were quite analogous to the ones presented, to, to the facts and the guidelines presented before Judge Hellerstein. All right. Thank you. We'll now hear from Mr. Angeletti for a minute. In terms of the disparities question that, that you raised, Judge Sullivan, the, the problem I have with that, defense counsel Blow gave exhaustive information about the closest cases she could find. As Mr. Ellsberg says, there aren't a lot of Iran cases, there aren't a lot of Venezuela cases. So she, she did a survey of cases involving Iranian sanctions. And it was exhaustive. And she found that the average sentence for those cases was 28.9 months. I don't think that the district court, I, I'll disagree with Mr. Ellsberg, I don't think the district court carefully considered those. Because what the district court said was two sentences. Those cases are dependent on the particular facts. It is very hard to make comparisons. And as defense counsel in the district court pointed out, judges make those kind of comparisons all the time. Okay. Well, but I mean, so how many of those other cases involve people who got four level enhancements for leadership role? Okay. The exact number I, I don't have to hand. Okay. Can I ask a small question? So does the record reflect why your client withdrew his guilty plea and then entered another guilty plea later? Yes. What happened was he entered the guilty plea. There was then a lot of additional discovery. And defense counsel wanted to make sure that she reviewed that discovery to see whether that guilty plea was in fact providently entered. And so that she could advise her client as to entering the plea with the full knowledge of all the discovery that the government provided. Okay. But it's, the one thing about Mr. Moniz-Gorel is from 2019 when he entered that first guilty plea, he's always acknowledged that he did wrong. He's never tried to justify it. And it's a hard thing for him because he really loves this country. This country meant a lot to him. It allowed him to come here from Venezuela with nothing and to build his own successful company. And you can see from his remarks at sentencing, he felt quite, he acknowledged that he should not have done this. He explained that it was a benighted attempt to keep his company running. But he felt quite badly about this. All right. Thank you Mr. Angeletti. Thank you Judge.